Kathy A. GAVENDA

v.

**ORLEANS COUNTY, et al.**

No. 95–CV–0251E(Sc).

United States District Court,
W.D. New York.

April 12, 1996.

Emmelyn Logan–Baldwin, Rochester, NY, for Plaintiff.

Colleen O'Connell Jancevski, Flaherty Cohen Grande Randazzo & Doren, P.C., Buffalo, NY, for Defendant.

### Memorandum & Order

SCOTT, United States Magistrate Judge.

This matter has been referred to this court pursuant to 28 U.S.C. § 636(b)(1)(A) by Order dated February 20, 1996. Before the court are numerous motions for protective orders, motions to compel discovery, and a motion seeking clarification of Judge Elfvin's October 19, 1995 Order.

### Background

Plaintiff, who is employed by the Orleans County Sheriffs Department, claims that she has been discriminated against by defendants because she is female. She alleges that defendants violated her rights under Title VII of the Civil Rights Act of 1964, the New York Human Rights Law, the New York Civil Rights Law and the common law of slander. In 1988, plaintiff initiated a similar action in this District Court against Orleans County, the Orleans County Sheriff's Department and Orleans County Sheriff David M. Green. That action, hereafter referred to as "Gavenda I" (Civil No. 88–0408E), was resolved by a Stipulation of Settlement on or about December 18, 1991.

In the 1991 Settlement Stipulation, the defendants in Gavenda I [1] admitted that plaintiff's Title VII and civil rights were violated in that they had discriminated against her, by denying her promotional opportunities, because of her sex. The settlement included promoting plaintiff to Lieutenant (newly created by the Orleans County Legislature for her) and refraining from retaliation against her or any person who assisted her with her complaint. In addition, under the terms of the stipulation, the defendants in that action agreed " . . . to engage appropriate personnel in cooperation with plaintiff and her attorney and with the approval of the plaintiff and her attorney to write appropriate policies for the Sheriff's Department on a non-discriminatory work environment for employees and non-discriminatory hiring and promotion practices for all positions in the Department and standard operating procedures for the Department. This work will include establishing appropriate policies for any reading and video materials provided by the Department for prisoners. This will include an appropriate training program for all employees of the Sheriff's Department on these policies."

Plaintiff contends that the defendants have not complied with the terms of the settlement agreement, and instead, the defendants have discriminated and retaliated against her.

### Pending Motions

The pending motions in this matter may be grouped into three categories [2]:

---

1. All of the defendants in the 1988 action are named defendants in this action. Several of the defendants in this action were not named defendants in the 1988 action.

2. Also pending in this action is a Motion to Intervene by Norvin Fowlks (# 67). That motion is not within the referral jurisdiction of this

1. *Motions Relating to the Clarification of the October 19, 1991 Order*

 I. Defendants' motions for protective orders dated December 1, 1995 (# 71) and December 4, 1995 (# 72)

 ii. Defendant's motion to clarify the October 19, 1995 Order (# 74)

 iii. Plaintiff's motion for a protective order to allow Paul Sidari to attend Gavenda depositions dated December 15, 1995 (# 75);

 iv. Defendant's motion for a protective order prohibiting questioning of witness regarding issues resolved in Gavenda I dated February 16, 1996 (# 90);

2. *Plaintiff's motion to compel document discovery from defendants*

 I. Plaintiff's motion to compel discovery dated December 18, 1995 (# 77)

 ii. Defendants' cross-motion for a protective order dated February 16, 1996 (# 87)

3. *Motions relating to the scheduling of depositions*

 Plaintiff's motion for a protective order dated October 4, 1995 (# 68)

 ii. Plaintiff's motion for a protective order dated February 9, 1996 (# 85);

 iii. Plaintiff's motion for a protective order dated February 13, 1996 (# 86);

 iv. Defendants' cross-motion to compel discovery dated March 5, 1996 (# 113)

court, and thus, is pending before Hon. John T. Elfvin.

Several other pending motions appear to be moot, and are hereby deemed as such. Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (# 2), Plaintiff's Motion to Shorten the Time for the Motion for a Temporary Restraining Order and a Preliminary Injunction (# 5), and Defendants' Motion to Disqualify Plaintiff's Counsel from any Hearings Relating to the Motion for a Temporary Restraining Order and a Preliminary Injunction (# 12) are all mooted by Plaintiff's withdrawal of the Motion for a Temporary Restraining Order and a Preliminary Injunction (# 33). Similarly, Plaintiff's

**I. *Motions Relating to the Clarification of the October 19, 1995 Order***

Plaintiff filed a motion before the Hon. John T. Elfvin to consolidate this case with *Sidari v. Orleans County et al.,* 174 F.R.D. 275 (W.D.N.Y.1996) "for pretrial purposes" alleging that the two cases have common questions of law and fact. The *Sidari* matter is before Hon. Richard J. Arcara. On October 19, 1995, Judge Elfvin issued an Order which lauded the attempt to economize the time, money and efforts of the parties, but noted that he lacked jurisdiction to direct what "may be adduced or useable in a case pending before another judge...." Judge Elfvin concluded by ordering "liminally—that any and all discovery had in either of said two cases may be used, according to regular and ordinary standards, in the instant case."

Defendants have filed various motions seeking protective orders and clarification with respect to the October 19, 1995 Order [3] (# 71 and # 74). Plaintiff's counsel interprets Judge Elfvin's Order as having granted pretrial consolidation of the two cases and, based on this assumption, plaintiff counsel has represented that she intends to take a single deposition of each defendant common to both cases "with intertwined questions about the particular allegations of each case." Plaintiff's counsel also interprets Judge Elfvin's order as a determination that plaintiff may use the depositions taken in Gavenda I as if taken in connection with the instant matter or Sidari. Thus, Plaintiff has filed a motion for a protective order to allow Paul Sidari, the plaintiff in the *Sidari* matter, to attend the depositions noticed in the instant case (# 75).

Motion for the Appointment of a Magistrate Judge to Supervise Training (# 34) is mooted or resolved by Judge Elfvin's Minute Entry dated June 29, 1995.

3. Some counsel had questioned whether Judge Elfvin's original referral to this court encompassed the clarification motions upon which Judge Elfvin had already heard argument and deemed submitted. To avoid any confusion, on March 1, 1996 Judge Elfvin issued an Order directing that any such motions seeking clarification of previous orders regarding discovery are referred to the undersigned.

■ This Court does not interpret Judge Elfvin's October 19, 1995 Order as a consolidation of the two cases for pretrial purposes.

■ With respect to the use of the depositions taken in Gavenda I, Judge Elfvin's October 19, 1995 Order is silent. The depositions taken in connection with Gavenda I, were, obviously, taken only in connection with that case. It is presumed, however, that those witnesses were deposed under oath, and thus, the deposition transcripts—if relevant—are likely to be available to be used, at the very least, for impeachment purposes in any subsequent trial. Such a ruling can only be made during trial by the trial judge at the time such a proffer is made.

■ Similarly, this Court does not interpret the October 19, 1995 order as allowing joint depositions with intertwined questions relating to both cases. Judge Elfvin's order, while encouraging efforts of counsel to avoid duplication where possible, expressly holds that he can not consolidate the two matters. Even if consolidation were procedurally possible, inasmuch as there are substantial differences between the underlying claims of the two cases, consolidation would be unwarranted. The plaintiff in *Gavenda* claims discrimination based on her gender. The plaintiff in *Sidari* claims discrimination based upon his religion and national origin. Thus, conducting a single deposition of a defendant, or a non-party witness, in which questions regarding the two cases are intertwined is problematic. The use of such a deposition transcript at either trial, as testimony or for impeachment purposes, could be severely limited. Any efficiency in proceeding in the manner proposed by plaintiff is outweighed by the potential confusion of issues and facts which may render the deposition transcripts useless in further proceedings.

With respect to defendants' motion for a protective order prohibiting plaintiff from questioning certain defendants and non-party witnesses about allegations raised in Gavenda I. (Docket Nos. 72 & 90), during oral argument counsel for the defendants advised the Court that the parties had agreed upon the scope of "bridge" questions relating to Gavenda I and that judicial intervention with respect to this issue was not required at this time.

Finally, in light of the fact that the instant case and *Sidari* are not consolidated, for pretrial purposes or otherwise, plaintiff's motion seeking a protective order "permitting the physical presence of Paul Sidari at the depositions" to be taken in the instant case. (# 75) is denied. Mr. Sidari's presence at the depositions taken, in the instant action is unnecessary and unwarranted.

## II. *Plaintiff's December 18. 1995 Motion to Compel Discovery & Defendants' February 16, 1996 Cross–Motion for a Protective Order*

Plaintiff seeks to compel defendants to produce certain documents and respond to interrogatories. (# 77) More specifically, plaintiff seeks production of documents in response to request Nos. 1, 16, 20, 29, 30, 32, and 34 as set forth in her May 19, 1995 Request for Production. In addition, plaintiff seeks responses to her August 4, 1995 set of interrogatories. Plaintiff filed a "Supplemental Affirmation in Support of Motion to Compel Discovery" on February 20, 1996 which asks the court to compel production of documents in response to requests nos. 1, 3, 4, 18, 25 and 26 set forth in plaintiff's December 4, 1995 Notice to Produce.

Defendants have cross-moved for a protective order, asserting that disclosure of the personnel files (May 19, 1995 Request No. 1) is unnecessary in this case and protected under § 50–a of the New York Civil Rights Law.

With respect to the requested personnel files, § 50–a of the New York Civil Rights Law does not act as an absolute bar to disclosure in federal court civil rights actions. See *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988). However, that does not mean that the state statute is to be given no effect. According to the New York State Court of Appeals, the legislative intent underlying the enactment of § 50–a was enacted to prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the contest of a civil or criminal action and to avoid embarrassment and harassment of testifying officers by cross-examination concerning "unsubstantiat-

ed and irrelevant" matters in their personnel files. See *Matter of Capital Newspapers v. Burns,* 67 N.Y.2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986). Thus, some courts have ordered an *in camera* review of the materials to determine whether or not disclosure is warranted. *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988).

 In the instant case, at oral argument the Court was informed that plaintiff has now asked for the personnel files of approximately 28 employees of the Orleans County Sheriff's Office. The Court understands this to be a significant portion of the Sheriff's Office personnel. Plaintiff has not articulated a specific need for these files. Although § 50–a does not bar disclosure of such personnel records, the spirit and purpose of the statute are to be given some weight. Production of such documents containing intimately personal information about individuals most of whom are not parties to this lawsuit, is warranted only when the party seeking the information articulates a specific need for the information. Plaintiff has not done so in this case.

Therefore, the instant motion is denied without prejudice to the extent plaintiff seeks the personnel files. The Court is mindful of the fast approaching discovery cut-off date in this case. However, the Court is equally mindful that the difficulties now faced by the parties to complete discovery within the allowed period are largely a result of their inability to cooperate with each other. To facilitate the matter, any further motion by plaintiff seeking production of the personnel files, in the event plaintiff decides to make such a motion, shall be governed by the following schedule: Plaintiff may file a motion seeking production of the personnel files **on or before April 19, 1996.** Any such motion by plaintiff shall be supported by a list of the individuals whose personnel files

are requested and a detailed description of the individual's relationship to this case, if any. Plaintiff shall also set forth a particularized statement of the specific information sought from each individual's personnel file and why that information is relevant to plaintiff's claims in this action. Defendants shall respond to any such motion **on or before April 26, 1996.** Given the time considerations, pursuant to Rule 7 of the Local Rules of the Western District of New York, the Court declines to hear further oral argument on this issue.

With respect to the documents sought in Plaintiff's May 19, 1995 Request Nos. 16, 20, 29, 30, 32, and 34, and December 4, 1995 Request Nos. 1, 3, 4, 18, 25 and 26, at oral argument plaintiff agreed to pay the reasonable reproduction costs. Given that the utility and relevance of much of the requested information is subject to question, the Court directs that the responsive documents in each of the above requests be produced at plaintiff's cost. In addition to the plaintiff incurring the cost for reproduction of the documents, the Court will entertain an application by the defendants for reimbursement of reasonable administrative and labor costs incurred by the defendants in responding to these requests.

At oral argument the Court was advised that plaintiff's request to compel answers to the August 4, 1995 interrogatories, is moot inasmuch as defendant's have responded to the interrogatories.

### III. *Motions Relating to the Scheduling of Depositions*

Plaintiff sought a protective order prohibiting defendants from continuing with non-party depositions which she alleged she could not attend due to scheduling concerns.[4] (# 85 and # 86) Plaintiff had filed a similar motion on October 4, 1995.(# 68) That motion was adjourned *sine die* by Magistrate Judge

---

4. In support of the February 12, 1996 motion for a protective order, plaintiff submitted an affidavit by Timothy A Bourke who alleges that he was subpoenaed to appear for a deposition in connection with the *Sidari* matter. In that affidavit, Mr. Bourke recounts various conversations between himself and Ms. Jancevski (counsel for some of the defendants), who he asserts threatened to have him held in contempt for failing to appear

at a noticed deposition after he told her he instead had to appear before the Erie County Grand Jury on that same day. Mr. Bourke concludes his affidavit by stating that Ms. Jancevski agreed to reschedule the deposition. In any event, inasmuch as Mr. Bourke was not subpoenaed in connection with the instant matter, his testimony does not assist the court in the determination of the instant motions.

Maxwell. Inasmuch as the October 4, 1995 motion is subsumed within the February 12, 1996 motion for a protective order, it is hereby deemed to be moot.[5]

By way of cross-motions, defendants sought an order compelling plaintiff to attend or forfeit the right to attend the depositions and to refrain from obstructing the taking of the non-party depositions.

At the Court's urging, counsel consulted with each other at the conclusion of the oral argument, and within a matter of hours advised the Court that they had come to an agreement with respect to the scheduling of the remaining depositions. This agreement was confirmed in writing by a letter from defense counsel Colleen O'Connell Jancevski dated March 11, 1996. The March 11, 1996 letter also informed the Court that all counsel had agreed that in the event that the depositions noticed as of March 8, 1996 could not be completed as set forth in the schedule attached to that letter, such deposition would be conducted on Saturdays or alternative dates to insure timely completion by the discovery deadline. The Court hereby incorporates the terms of the March 11, 1996 letter as part of this order.

■ In the instant motions, plaintiff also seeks a ruling striking the depositions of the non-party witnesses already taken by defendants in her absence. The court notes that plaintiff's counsel does not certify that she was on trial on the dates that these depositions were taken or that she was even unavailable on those dates. In any event, such a request amounts to a motion *in limine* which is more appropriately presented to the trial judge when and if those transcripts are proffered for use at trial.[6] Thus, this portion of plaintiff's motion is denied without preju-

dice to be presented at the appropriate time to the trial judge.

### Conclusion

Based on the above, it is ordered that:

1. Defendants' motions for protective orders dated December 1, 1995 (# 71), December 4, 1995 (# 72), Defendant's motion to clarify the October 19, 1995 Order (# 74), and Defendant's motion for a protective order prohibiting questioning of witness regarding issues resolved in Gavenda I dated February 16, 1996 (# 90) are GRANTED IN PART AND DENIED IN PART, as set forth above;

2. Plaintiff's motion for a protective order to allow Paul Sidari to attend Gavenda depositions dated December 15, 1995 (# 75) is DENIED;

3. Plaintiff's motion to compel discovery dated December 18, 1995 (# 77) and Defendants' cross-motion for a protective order dated February 16, 1996 (# 87) are GRANTED IN PART AND DENIED IN PART, as set forth above;

4. Plaintiff's motion for a protective order dated October 4, 1995 (# 68) Plaintiff's motion for a protective order dated February 9, 1996 (# 85); Plaintiff's motion for a protective order dated February 13, 1996 (# 86); and Defendants' cross-motion to compel discovery dated March 5, 1996 (# 113) are DENIED as being moot. The Court, however, incorporates the terms of the March 11, 1996 letter from Colleen O'Connell Jancevski and the attached deposition schedule and so orders the agreed upon dates contained therein, a copy of which is attached hereto and made a part hereof.

SO ORDERED.

---

5. The court has considered the arguments set forth in support of the October 4, 1995 motion as being made in support of the instant motion.

6. In her papers, plaintiff's counsel correctly states that she filed the motion for a protective order prior to the date of the first non-party deposition and requested expedited treatment by the court. The motion was filed February 12, 1996, and the first non-party deposition appears to have taken place on February 15, 1996. It should be noted that this matter was first re-

ferred to this court by order dated February 20, 1996. In any event, the court also notes that the Second Circuit has held that the filing of a motion for a protective order does not stay a deposition, but that such a stay requires a court order to that effect. *FAA v. Landy*, 705 F.2d 624 (2d Cir.1983). Plaintiff's counsel's failure to attend those depositions or arrange for another attorney to attend on her behalf is even more conspicuous in light of such a ruling.

# FLAHERTY COHEN GRANDE RANDAZZO DOREN PC

### COUNSELORS AND ATTORNEYS AT LAW

SUITE 210, FIRSTMARK BUILDING • 135 DELAWARE AVENUE • BUFFALO, NEW YORK 14202
FAX: 716/854•6430 PHONE: 716/853•7262

March 11, 1996 **RECEIVED**

 MAR 1 . 1996

Hon. Hugh B. Scott, Magistrate Judge
U.S. Courthouse, Room 414 U.S. MAGISTRATE JUDGE
68 Court Street BUFFALO, N Y
Buffalo, New York 14202

 ## DEPOSITION SCHEDULE

| DATE & TIME | DEPONENT | LOCATION |
|---|---|---|
| April 2, 1996, 9:00 a.m. | Wayne Litchfield | Rochester * |
| April 3, 1996, 9:30 a.m. | Phillip McKenna | Rochester |
| April 4, 1996, 9:30 a.m. | Phillip McKenna | Rochester |
| April 5, 1996, 9:30 a.m. | Larry Manning | Albion * * |
| April 10, 1996, 9:30 a.m. | Larry Manning | Rochester |
| April 11, 1996, 9:30 a.m. | Stan Dudek | Rochester |
| April 17, 1996, 9:30 a.m. | Stan Dudek | Rochester |
| April 18, 1996, 9:30 a.m. | Sandra Adams | Buffalo * * * |
| April 19, 1996, 9:30 a.m. | Donald Stilwell | Albion |
| April 19, 1996, 1:30 p.m. | Zina Baker | Albion |
| April 29, 1996, 9:00 a.m. | Derek Hinman | Albion |
| April 29, 1996, 1:30 p.m. | Wm. Breckinridge | Albion |
| April 30, 1996, 1:30 p.m. | Eileen Kosieracki Do | Albion |
| April 30, 1996, 1:30 p.m. | Candy Allport CSW | Albion |
| May 1, 1996, 9:30 a.m. | Peter Killian | Rochester |
| May 6, 1996 | reserved | |
| May 8, 1996, 9:30 a.m. | Peter Killian | Rochester |
| May 9, 1996 | reserved | |
| May 10, 1996 | reserved | |

Locations of depositions are specified as follows:

\* Rochester: Ms. Logan–Baldwin's offices

\* \* Albion: Orleans County Administration Building or in Courthouse Square, as availability permits; all parties will be advised accordingly

\* \* \* Buffalo: Flaherty Cohen offices